UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

    v.                                                      **DECISION AND ORDER**
                                                            19-CR-114-RJA
JERIEL SLAY,

                     Defendant.

_____

Defendant Jeriel Slay has filed a second *pro se* motion (Dkt. No. 82) for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). He is serving a 112-month aggregate sentence of incarceration (Dkt. No. 67), imposed on December 13, 2019, following his guilty plea to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and 2. The Government has filed a response in opposition (Dkt. No. 85), and Defendant has filed reply papers (Dkt. No. 88).

On December 29, 2020, the Federal Bureau of Prisons ("BOP") transferred Defendant (*see* Dkt. No. 82, p. 1; Dkt. No. 85, p. 4) out of BOP physical custody to serve the remainder of his sentence on home confinement, pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).[1] Defendant is currently on home confinement and is

---

[1] The CARES Act "expanded the authority of the BOP to transfer inmates to home confinement under certain conditions." *United States v. Fairbanks*, Case # 17-CR-6124-FPG, 2021 WL 776982, 2021 U.S. Dist. LEXIS 37798, *7 (W.D.N.Y. Feb. 27, 2021).

being supervised by personnel at a designated Residential Reentry Center (*i.e.*, a halfway house). He is 33 years old, with a projected release date—meaning the date his home confinement will end and his 2-year term of supervised release will commence—of July 24, 2026.[2]

Defendant's requested relief is that the Court reduce his sentence to time-served so that he may immediately commence his 2-year period of supervised release during which he would be supervised by the United States Probation Office for the Western District of New York. In the alternative, Defendant requests that the Court convert the remainder of his sentence of imprisonment to a period of supervised release, to be added to his existing 2-year period of supervised release. For the reasons that follow, Defendant's motion for a sentence reduction under the compassionate release statute is DENIED.

## DISCUSSION

Under the compassionate release statute, the Court may "reduce the term of imprisonment and impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). It is a defendant's burden to show that he or she is entitled to a sentence reduction under the compassionate release statute. *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (per curiam).

---

[2] *See Inmate Locator*, Federal Bureau of Prisons, Register Number 28305-055, https://www.bop.gov/inmateloc/ (last visited 3/14/2023). The parties referenced June 8, 2027 as Defendant's release date in their motion papers. *See* Dkt. No. 82, p.1; Dkt. No. 85, p. 3. The BOP has since updated that date, perhaps with a recalculation of Defendant's good time credit.

"A district court has broad discretion when considering a motion for compassionate release." *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022) (per curiam).

Preliminarily, the Government argues that because Defendant is currently on home confinement and is not federally imprisoned, the compassionate release statute is inapplicable, and the Court does not have the authority to consider Defendant's motion.

The Second Circuit, however, has held that the BOP's transfer of a prisoner to home confinement during the pendency of his or her Second Circuit appeal does not necessarily moot a defendant's compassionate release motion. *See United States v. Alba*, 21-873-cr, 2023 WL 220988, 2023 U.S. App. LEXIS 1080, *2 n.1 (2d Cir. 2023) (summary order) (noting that the defendant's transfer to home confinement did not moot his motion "because, *inter alia*, home confinement is a significant continuing restriction on his liberty and the government's position is that BOP retains the discretionary authority to revoke that privilege and return him to prison"); *United States v. Martinez*, 20-1983-cr (L), 20-2809-cr (CON), 2022 WL 200329, 2022 U.S. App. LEXIS 1931, *4 (2d Cir. 2022) (summary order) (noting that the defendant's "move to home confinement does not moot his appeal because he can still be relieved of his term of home confinement"); *see also United States v. Maldonado*, No. 21-11379, 2022 WL 1090981, 2022 U.S. App. LEXIS 9709, *4-5 n.4 (11th Cir. 2022) (per curiam) (rejecting the Government's argument on appeal that the Eleventh Circuit lacked jurisdiction to reach the merits of the defendant's appeal when the BOP placed him on home confinement, because "[i]f he prevailed in [the] appeal . . . and his sentence was then reduced to time served, he would no longer

3

be on home confinement and would begin serving his five-year term of supervised release immediately.  Given the possibility that [the defendant] could receive effective relief, the appeal is not moot, and we will address the merits."), citing *Martinez*, 2022 WL 200329, at *2.

The Court can reasonably infer from this case law that it is not impeded from considering Defendant's requested relief, solely on the basis that Defendant is no longer imprisoned and is on home confinement.

**I.     Exhaustion of Administrative Remedies**

Exhaustion, however, poses a different barrier here.

A motion under the compassionate release statute may be made by either the BOP or the defendant, but if it is the latter, only "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).

On December 3, 2020, Defendant filed his first motion (Dkt. No. 73) for compassionate release, predicated on the COVID-19 pandemic, *i.e.*, the alleged deplorable conditions of confinement at FCI Danbury, where he was housed at the time, and his alleged high-risk medical condition.  Attached to Defendant's motion was proof that he had asked for compassionate release from the Warden of FCI Danbury on September 23, 2020, and that the Warden subsequently denied his request.  *See* Dkt. No. 73, pp. 10-13.  The Government conceded in its opposition to Defendant's first motion that Defendant had met the exhaustion requirement.  *See*

4

Dkt. No. 76, p. 4 n.1. Defendant's first motion was ultimately denied by this Court as moot (*see* Dkt. Nos. 79, 81) because Defendant was no longer housed at FCI Danbury.³ As the Court is now aware, the BOP had released him to home confinement via the CARES Act on December 29, 2020.

The Government asserts that the instant motion should be denied because Defendant did not submit a new application to the Warden after his first motion was denied by the Court.

Because the instant motion raises different grounds for a sentence reduction that his previous motion, and because Defendant is now in a different posture being on home confinement rather than incarcerated at FCI Danbury, the Court finds that Defendant was required to request compassionate release from the Warden as a predicate to filing another motion in light of these changed circumstances. *See United States v. Lucas*, No. 11-CR-629-8 (CS), 2022 U.S. Dist. LEXIS 182629, *5-6 (S.D.N.Y. Oct. 5, 2022) (noting that some district courts have found a second warden application "necessary where the motion raises a different ground than the previous one"); *compare United States v. Carbonaro*, 2022 U.S. Dist. LEXIS 148502, *5 (S.D.N.Y. Aug. 18, 2022) (deeming the defendant's original request for

---

³ *See, e.g., United States v. Chandler*, 847 Fed. Appx. 78, 79 (2d Cir. 2021) (dismissing the defendant's appeal of the denial of his motion under the compassionate release statute as moot because while the appeal was pending, he was released from prison and the only relief he asked for on appeal was "early release from prison due to his health"); *United States v. Chestnut*, 989 F.3d 222, 224-225 (2d Cir. 2021) (holding that the defendant's appeal of the denial of a motion for compassionate release was moot upon the defendant's release from incarceration when the defendant's "arguments [for release] — based on the risks posed by COVID-19 and his unique family issues —focus[ed] exclusively on why he should be released from *prison*") (emphasis in original).

compassionate release to the BOP as "having satisfied the exhaustion requirement for his renewed motion," where the second motion made essentially the same argument for release as his first).

For sake of efficiency, rather than invite Defendant's refiling upon proof of exhaustion, the Court explains herein why it would deny the motion on the merits if it were properly before the Court for disposition.

## II.     Extraordinary and Compelling Circumstances

The Second Circuit has agreed with the majority position of "district courts across the country" that "the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).  Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 237-238 (emphasis in original), quoting 28 U.S.C. § 994(t).

Defendant argues that his sentence should be reduced/ modified because (1) as the COVID-19 pandemic evolves, there is an "increasing[ly] high possibility" the BOP might return him to prison to serve the remainder of his sentence; (2) allowing Defendant to immediately commence his 2-year term of supervised release would afford him a better opportunity to make payments toward his restitution obligation and support his family, as restrictions imposed by the halfway house essentially limit him to minimum wage jobs; (3) Defendant has rehabilitated himself and has been successful on home confinement, to include maintaining gainful employment and voluntarily participating in psychological counseling; (4) Defendant now suffers from

6

hypertension, another high-risk condition in addition to his history of severe asthma, the latter which compelled the BOP to place him on home confinement; and (5) Defendant experienced "oppressive incarceration conditions" during the early stages of the COVID-19 pandemic before he was placed on home confinement.

First, Defendant's "transfer to home confinement addresses his COVID-19-based concerns because he is no longer in prison where COVID-19 outbreaks have occurred." *Martinez*, 2022 U.S. App. LEXIS 1931, at *4, citing *United States v. Tagliaferri*, 13 Cr. 115 (RA), 2019 WL 6307494, 2019 U.S. Dist. LEXIS 205103, *9-10 (S.D.N.Y. Nov. 25, 2019) (stating "although [the defendant]'s request for compassionate release is not technically 'moot' as a legal matter," transfer to home confinement "obviated the need for granting him" compassionate release because his motion had been "based on his deteriorating health conditions and his need for medical care").

Defendant's medical issues in the context of the COVID-19 pandemic aside, then, the Court has carefully considered Defendant's filings and arguments and finds that he has not shown extraordinary and compelling reasons for a reduction in sentence.

To be sure, Defendant's commitment to bettering himself during his period of home confinement is commendable. Defendant has engaged in therapy, and his counselor writes of his progress over the year-and-a-half he has seen her, including taking accountability for his actions and changing his negative behaviors. Moreover, his family and friends have submitted letters noting Defendant's growth and maturity and expressed remorse for his past actions. He has been diligently working and

was accepted to college.  Moreover, Defendant has experienced stress and anxiety while on home confinement, stemming from worry that the BOP will return him to a federal correctional institution, and from various restrictions and limitations imposed by the halfway house that he asserts have disrupted his rehabilitation efforts.

Defendant's reasons for a sentence reduction are largely characterized as his achievements (rehabilitation) while on home confinement, and his disagreement and frustrations with the restrictions imposed while he has been on home confinement. However, halfway house restrictions are experienced by any defendant who is released from prison and is designated to a halfway house, before transitioning to a greater degree of freedom on supervised release.  Moreover, as to Defendant's concern that the BOP could return him to physical custody in prison, the Court agrees with the Government that it would be speculative and premature for the Court to reduce Defendant's sentence for this reason.  Should that situation arise, Defendant could file a renewed motion for release based on that change in circumstances.

## III.     18 U.S.C. § 3553(a) Factors

Even if Defendant had presented extraordinary and compelling reasons for a sentence reduction, the Court finds that the sentencing factors in 18 U.S.C. § 3553(a) weigh against compassionate release.[4]

---

[4] The § 3553(a) factors include the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) afford adequate deterrence; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed training and treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a).

Defendant was sentenced in December 2019 to an aggregate 112 months of incarceration (88 months for conspiracy to commit wire fraud and 24 months for aggravated identity theft, to run consecutive), to be followed by 2 years of supervised release (2 years on Count 1, and 1 year on Count 2, both counts to be served concurrently). The Court also imposed restitution in the amount of $306,648.56. *See* Dkt. No. 67 (Judgment); Dkt. No. 68 (Statement of Reasons); Dkt. No. 72 (Sentencing Tr.); CM/ECF Minute Entry, 12/13/2019. At sentencing, Defendant requested a sentence of 60 months. The Court rejected that request, and sentenced Defendant at the low-end of the total advisory Guidelines range of 111 to 132 months. *See generally* Dkt. No. 72.[5]

The nature and circumstances of the offense conduct were egregious. Defendant was the organizer, leader, and manager of a sophisticated scheme wherein he and others would obtain the personal information of victims, including investment account information, bank information, and other personally identifiable information; create a Limited Liability Company (LLC) with a name indicating ownership by those same victims; open bank accounts in the name of the fraudulent LLCs; and transfer the victims' money from their legitimate financial accounts to the fraudulent LLC bank accounts via a wire transfer. Once the money was transferred, Defendant directed his co-conspirators to pose as the victims, enter banks, and withdraw money from the fraudulent LLC bank accounts and provide that money to

---

[5] The wire fraud conspiracy count had a Guidelines range of 87 to 108 months, while aggravated identity theft carried a statutory mandatory minimum term of two years' imprisonment to run consecutive to any other term of imprisonment.

9

him.  Defendant's identified co-conspirators who he directed to make the bank withdrawals were family members, *i.e.*, his half-sister and two uncles.  See *United States v. Angela* Slay, 19-CR-115-RJA; *United States v. Sirr Wright*, 19-CR-116-RJA; *United States v. Michael Wright*, 19-CR-117-RJA.[6]

The investigation revealed that Defendant was responsible for an actual loss of $306,648.56, and his conduct involved actual loss to six victims.  Defendant and others attempted to defraud another five victims as well.  In addition, a total of 68 credit cards were seized during a search of Defendant's residence, with 42 victims' names on the cards, as well as various false driver's licenses, bank information, and false utility bills with various victims' names and personal identification on them.

Upon acceptance of responsibility for his conduct, Defendant admitted his actions were driven by his desire for a certain standard of living.  He used the money to, among other things, purchase a Mercedes Benz, go on vacations, and rent "nice" homes and exotic cars.

Again, Defendant's projected release date from home confinement is July 24, 2026, approximately 40 months from now.  The Court concludes that the § 3553(a) factors, particularly the seriousness of the offense and the need to achieve deterrence, propel this Court's denial of Defendant's motion.  It has additionally assessed the § 3553(a) factors that do weigh in Defendant's favor, to include Defendant's rehabilitation efforts and Defendant's somewhat limited criminal history.

---

[6] On March 2, 2021, the Court denied co-conspirator Michael Wright's motion for compassionate release, finding that the § 3553(a) factors, including the offense conduct, warranted denial of the motion.  See 19-CR-117, Dkt. No. 45.

When imposing the sentence, however, the Court stated the complexity and seriousness of the case warranted a Guidelines sentence. Dkt. No. 72, p. 24. During the sentencing hearing, the Court also noted, "[t]his was not some nickel-and-dime fraud," and commented that the instant case was one of the most serious fraud cases the Court had ever seen. Dkt. No. 72, pp. 12, 13. These statements still hold true to this day.

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release (Dkt. No. 82) pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED without prejudice to filing a renewed motion for compassionate release should he be returned by the BOP to a federal correctional facility.

**IT IS SO ORDERED.**

                                          _s/Richard J. Arcara_
                                          HONORABLE RICHARD J. ARCARA
                                          UNITED STATES DISTRICT COURT

Dated: March 14, 2023
       Buffalo, New York